IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ARIA KOVACH,                          :      CIVIL ACTION
                                      :      NO. 08-5388
        Plaintiff,                    :
                                      :
        v.                            :
                                      :
                                      :
UNUM LIFE INS. CO. OF                 :
AMERICA,                              :
                                      :
        Defendant.                    :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.
                                            DECEMBER 30, 2009

        Plaintiff Aria Kovach ("Plaintiff") brings this ERISA
action seeking payment of long-term disability benefits,
retroactive to May 28, 2008, by Defendant Unum Life Insurance
Company of America ("Unum").[1]  Before the Court are cross-motions
for summary judgment.  For the reasons that follow, Defendant's
motion for summary judgment (doc. no. 9) will be granted and
Plaintiff's motion for summary judgment (doc. no. 12) will be
denied.

I. BACKGROUND

        On Dec. 12, 1997, while she was a McDonald's employee,

---

        [1]     The Employee Retirement Security Act of 1974 ("ERISA"),
29 U.S.C. § 1132(a)(1)(B), allows an individual to bring a civil
action "to recover benefits due to him under the terms of his
plan, to enforce his rights under the terms of the plan or to
clarify his rights to future benefits under the terms of the
plan."

Plaintiff suffered several herniated discs in her lower back while pulling heavy trash bags. She had ongoing pain in her back and left leg, and began receiving workers' compensation benefits. To alleviate the pain, Plaintiff underwent a discectomy surgery in 1999. The surgery was initially successful, and Plaintiff was able to begin work as a bank teller with First Financial Bank ("First Financial") in 1999. In 2002, she was promoted to a staff accountant position at First Financial.

While working for First Financial, Plaintiff's conditioned steadily worsened. She was forced to undergo a second discectomy surgery on Aug. 12, 2005. Plaintiff suffered complications during the surgery, requiring a second surgery on Aug. 23, 2005. At all times during Plaintiff's employment with First Financial, the bank maintained a group insurance policy (the "Plan") for the benefit of its employees. Unum was the policy provider at all relevant times.

Plaintiff applied for and was granted short term disability benefits by Unum from Aug. 12, 2005, until Nov. 10, 2005.[2] On November 11, 2005, Plaintiff began receiving long

---

[2]     Under the terms of the Plan, a person is disabled when Unum determines that:
- you are limited from performing the material and substantial duties of you regular occupation due to your sickness or injury; and
- you have a 20% or more loss in you indexed monthly earnings due to the same sickness or injury
After 24 months of payments, you are disabled when

term, total disability benefits.  These benefits were paid both from First Financial's group policy and from her individual policy, for which she paid a premium.[3]  Plaintiff continued to receive long-term disability benefits until April 30, 2008 when, citing the report of an independent medical exam performed by Dr. Gregory Anderson, Unum terminated Plaintiff's long-term total disability payments.[4]

Based on Dr. Anderson' report, and the reports of other medical and vocational experts, Unum determined that Plaintiff no longer fell within the Plan's definition of "total disability." (Def.'s Mot. for Summ. J. Ex. 79, doc. no. 9.)  Specifically, Unum found that Plaintiff was "able to work in her sedentary occupation on at least a part-time bases but refused to do so." (Id. at 16.)  Unum relied Dr. Anderson's report which opined that Plaintiff could return to work as long as she underwent physical

---

Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

[3]    Plaintiff files the instant suit seeking to overturn Unum's decision to terminate her benefits under both the group policy and her individual policy.  Plaintiff avers in her complaint that she had an individual policy that she was receiving long-term disability payment from. (Pl.'s Compl. ¶ 11.) Unum responds that they were not the issuer or underwriter of Plaintiff's individual policy, and therefore Unum cannot be liable for any benefits under that policy.  See infra note 8.

[4]    After Unum terminated Plaintiff's benefits, they continued sending Plaintiff "extra-contractual" payments until May 27, 2008.

therapy and was weaned back into a 40 hour work week. (Pl.'s
Cross Mot. for Summ. J. 9-10, doc. no. 12).

On May 12, 2008, Plaintiff appealed Unum's decision.
In support of her appeal, Plaintiff submitted a medical
evaluation from her attending physician, Dr. Kenan Aksu, which
stated, "I recommend that [Plaintiff] not attempt going back to
work even on a limited basis because of the possibility of
worsening her condition." (Def.'s Mot. for Summ. J. Ex. 88, doc.
no. 9.) Unum referred Plaintiff's claim file to Dr. Isadore G.
Yablon, a medical consultant who is board certified in orthopedic
surgery for a review. Dr. Yablon issued a report which states
that "I would agree with Dr. Anderson that she could return to
her usual occupation as an accountant provided she not lift more
than 10 pounds." (Def.'s Mot. for Summ. J. Ex. 90, doc. no. 9.)
It further states that Plaintiff could be taught the necessary
structured physical therapy and she could do these exercises on
her own at home.[5] (Id.)

On July 23, 2008, Unum denied Plaintiff's appeal. (Id.

---

[5]    Plaintiff, in her motion for summary judgment, contends
that she was not able to return to work because she could not
start physical therapy at the time when Drs. Anderson and Aksu
recommended that she start. The reasoning Plaintiff gave for not
beginning physical therapy was that she could not afford to pay
for it without worker's compensation payments. These payments
were dependent on worker's compensation litigation that was in
progress. (Pl.'s Mot. for Summ. J. 10, doc. no. 12.) Dr.
Yablon's review concluded that Plaintiff could conduct the
requisite exercises on her own, and therefore, was physically
able to return to work.

Ex. 92.)  On Sept. 13, 2008, Dr. Aksu examined Plaintiff again and concluded that she could return to work with some restrictions, including not sitting for longer than thirty minutes in a row and not lifting more than ten pounds.  On Sept. 22, 2008, Plaintiff began working a part-time front desk position with her podiatrist, Dr. Craig McHugh.

This lawsuit followed Unum's denial of Plaintiff's appeal.  Plaintiff seeks payment of total disability benefits from May 28, 2008 until Sept. 21, 2008 and residual disability benefits from Sept. 22, 2008 through the present, plus interest. (Pl.' Compl. ¶ 29.)

II.  LEGAL STANDARD

A.  Motion for Summary Judgment under Fed. R. Civ. P. 56

A court may grant summary judgment when "the pleadings, the discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that

fact. Id. at 248-49. "In considering the evidence, the court should draw all reasonable inferences against the moving party." El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007). However, while the moving party bears the initial burden of showing the absence of a genuine issue of material fact, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather its response must - by affidavits or as otherwise provided in [Rule 56] - set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

These rules apply with equal force to cross-motions for summary judgment. See Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008). When confronted with cross-motions for summary judgment, as in this case, the Court considers each motion separately. See Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co., 10 F.3d 144, 150 (3d Cir. 1993) (noting that concessions made for purposes of one party's summary judgment motion do not carry over into the court's separate consideration of opposing party's motion).

B.    ERISA Standard of Review

A denial of a claim for benefits brought pursuant to ERISA is governed by a de novo standard of review, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch,

6

489 U.S. 101, 115 (1989).  Where a plan administrator is granted

such discretion, the Court must review the administrator's denial

of a claim for benefits using an arbitrary and capricious

standard of review.  See id. at 111 (noting that where a plan

administrator is given discretionary authority "[t]rust

principles make a deferential standard of review appropriate").

      "Under the arbitrary and capricious (or abuse of

discretion) standard of review, the district court may overturn a

decision of the Plan administrator only if it is 'without reason,

unsupported by substantial evidence or erroneous as a matter of

law.'"  Abnathya v. Hoffman-La Roche, Inc., 2 F.3d 40, 45 (3d

Cir. 1993) (quoting Adamo v. Anchor Hocking Corp., 720 F. Supp.

491, 500 (W.D. Pa. 1989)); see also Ellis v. Hartford Life and

Accident Ins. Co., 594 F. Supp. 2d 564, 566 (E.D. Pa. 2009)

(noting that a court applying an arbitrary and capricious

standard of review is "not free to substitute its judgment for

that of the administrator"); Fabyanic v. Hartford Life and

Accident Ins. Co., No. 08-400, 2009 WL 775404, at *5 (W.D. Pa.

Mar. 18, 2009) (noting that the phrases "abuse of discretion" and

"arbitrary and capricious" are interchangeable and that both are

"understood to require a reviewing court to affirm the

Administrator unless an underlying interpretation or benefit

determination was unreasonable, irrational, or contrary to the

language of the plan").

Until recently, courts in the Third Circuit applied the arbitrary and capricious standard of review "using a 'sliding scale' in which the level of deference . . . accorded to a plan administrator would change depending on the conflict or conflicts of interest affecting plan administration." Estate of Schwing v. The Lilly Health Plan, 562 F.3d 522, 525 (3d Cir. 2009); see also Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 387, 392 (3d Cir. 2000) (discussing "heightened" arbitrary and capricious standard of review). However, following the Supreme Court's decision in Metropolitan Life Ins. Co. v. Glenn, this type of enhanced arbitrary and capricious review is no longer appropriate. 554 U.S. ___, 128 S.Ct. 2343, 2350 (2008) (finding that "a conflict should be weighed as a factor in determining whether there is an abuse of discretion" (internal quotations omitted)); see also Schwing, 562 F.3d at 525 ("Accordingly, we find that, in light of Glenn, our "sliding scale" approach is no longer valid. Instead, courts reviewing the decisions of ERISA plan administrators or fiduciaries in civil enforcement actions brought pursuant to 29 U.S.C. § 1132(a)(1)(B) should apply a deferential abuse of discretion standard of review across the board and consider any conflict of interest as one of several factors in considering whether the administrator or the fiduciary abused its discretion"); Ellis, 594 F. Supp. 2d at 566 ("Glenn makes clear that there is no heightened arbitrary and capricious

standard of review"); <u>Farina v. Temple Univ. Health Sys. Long Term Disability Plan</u>, No. 08-2473, 2009 WL 1172705, at *9 (E.D. Pa. Apr. 28, 2009) (noting that post-<u>Glenn</u>, "there are only two possible standards of review that could apply . . . arbitrary and capricious or <u>de novo</u>).[6]

Thus, in reviewing Plaintiff's instant ERISA claim, the Court will apply a deferential arbitrary and capricious standard of review. In so doing, the Court will "'take account of several different considerations of which a conflict of interest is one,' and reach a result by weighing all of those considerations." <u>Schwing</u>, 562 F.3d at 526 (quoting <u>Glenn</u>, 128 S.Ct. at 2351); <u>see also</u> Post v. Hartford Ins. Co., 501 F.3d 154, 162 (3d Cir. 2007) (noting that a court performing this inquiry must consider "both structural and procedural factors" and that "[t]he structural inquiry focuses on the financial incentives created by the way the plan is organized, whereas the procedural inquiry focuses on

---

[6]    In the instant case, the parties agree that the Plan vested Unum with the express discretion to make disability determinations, and therefore, the arbitrary and capricious standard should apply. (<u>See</u> Pl.'s Mot. for Summ. J. at 4, doc. no. 12 (noting that "the arbitrary and capricious standard of review applies"); <u>see also</u> Def.'s Mot. for Summ. J. at 12, doc. no. 9 ("[T]his Court should review Unum Life's decision to deny [long-term disability] payments under the highly discretionary arbitrary and capricious standard.")) Therefore, the Court finds that an arbitrary and capricious standard of review is appropriate in this case.

how the administrator treated the particular claimant").[7]


III. DISCUSSION

   A. Plaintiff's Motion for Summary Judgment

        Plaintiff moves for summary judgment, arguing that

Unum's termination of her disability benefits under the Plan was

arbitrary and capricious.[8]  Plaintiff argues that Unum's position

---------------

   [7]    Prior to the Glenn and Schwing decisions, courts in the
Third Circuit analyzed structural and procedural factors
separately, to determine whether a heightened arbitrary and
capricious standard of review was appropriate.  See Post, 501
F.3d at 154.  Now, however, while these factors remain relevant,
such a rigid analytical framework is not required.  See Schwing,
562 F.3d at 526 ("noting that "benefits determinations arise in
many different contexts and circumstances, and, therefore, the
factors to be considered will be varied and case-specific").

   [8]    In a footnote on page 1 of her brief in support of her
motion for summary judgment, Plaintiff argues that she is
entitled to recover long-term disability benefits under both her
group policy provided by her former employer and under an
individual policy for which she paid premiums personally.  (Pl.'s
Mot. Summ. J. 1, doc. no. 12.)
        In their reply brief and attached exhibits, Unum points
out that they did not underwrite, nor issue, Plaintiff's
individual policy, a company called Provident Life and Accident
Insurance Company ("Provident Life") did.  (Def.'s Reply Br. in
Supp. Mot. Summ. J. 4, doc. no. 13.)  While both Provident Life
and Unum are insuring subsidiaries of the Unum Group, they are
separate legal entities.  Unum is incorporated in Maine with a
principal place of business in Portland, ME.  Provident Life is
incorporated in Tennessee and has a principal place of business
in Chattanooga, TN.  (Id. at 5.)  Unum was never a contractual
party to Plaintiff's individual policy, nor did Unum ever assume
liability for claims against Provident Life policies.  (Id.)
        Defendant has attached all the relevant documents to
prove this to their reply brief at exhibit A.  Additionally, this
was raised as an affirmative defense as to claims made under the
individual policy as the thirty-sixth affirmative defense in
their answer to Plaintiff's complaint (Answer at 15.)  Based on

10

as administrator of the Plan creates an inherent structural conflict of interest. Additionally, Plaintiff argues that pursuant to the <u>Glenn</u> decision, Unum was not permitted to focus on Dr. Anderson's report which permitted Plaintiff to return to work at the expense of other doctors' reports; and relately that the doctors' reports allowing Plaintiff to return to work were conditional and equivocal. Finally, Plaintiff argues that her return to work on Sept. 22, 2008, only precluded her from receiving total disability benefits under the Plan, therefore, she is still entitled to receive residual disability benefits from Unum. These arguments will be addressed <u>seriatim</u>.

### 1. Conflict of Interest

First, as to Unum's conflict of interest, the parties agree that an arbitrary and capricious standard of review applies. Further, the parties agree that Unum acted as both the claims administrator and insurer of the Plan, creating a conflict of interest. (Def.'s Mot. Summ. J. 16, doc. no. 9; Pl.'s Mot. Summ. J. 4, doc. no. 12.) However, the parties dispute the effect that this conflict of interest had on the claims determination; Plaintiff asserts that the conflict of interest is a factor weighing in favor of a finding that the administrator abused their discretion, whereas Defendant argues that the

---

the available evidence, Unum cannot be held liable for any claim made under Plaintiff's individual disability insurance policy.

conflict of interest had no effect whatsoever on the claims determination, and therefore, does not tend to show that there was an abuse of discretion.  (Id.)

As an initial matter, The Third Circuit has held that "some level of conflict may be unavoidable." Skretvedt v. E.I. DuPont de Nemours and Co., 268 F.3d 167, 175 n.6 (3d Cir. 2001). Notwithstanding this "unavoidable" level of conflict, the Supreme Court's decision in Glenn contemplated that, when a conflict of interest is present, judges will "take account of several different considerations of which a conflict of interest is one." Glenn, 128 S.Ct. at 2351.  The decision elaborates on this point, stating that "where circumstances suggest a higher likelihood that [the conflict] affected the benefits decision," its importance as a factor increases, making a finding of an abuse of discretion more likely. Id.  As an example, the Supreme Court pointed to a hypothetical situation "where an insurance company administrator has a history of biased claims administration." Id.

Plaintiff does not aver that there are any circumstances, absent the conflict of interest itself, which make this factor particularly important in the instant case.  It is perfectly permissible for a claims administrator to work for the insurer of a plan under 29 U.S.C. § 1132(2).  In light of the Supreme Court's decision in Glenn, there is nothing in the facts

12

before this Court which tends to make the conflict of interest a particularly important factor in this case. Applying the <u>Glenn</u> abuse of discretion standard, the conflict of interest does not weigh in favor of determining that the administrator's decision was arbitrary and capricious. <u>See</u> <u>Estate of Schwing</u>, 562 F.3d at 526 (citing <u>Glenn</u>, 128 S.Ct. at 2350).

### 2. <u>Dr. Anderson's Opinion</u>

Plaintiff next argues that Defendant impermissibly afforded the opinion of Dr. Anderson greater weight than conflicting reports by Plaintiff's diagnosing physician and others. Plaintiff contends that the most important factor before the Court "pertains to the key medical records at issue and the biased manner in which UNUM interpreted the records." (Pl.'s Mot. Summ. J. 7, doc. no. 12.)

Plaintiff begins by noting that she has undergone two serious lower back surgeries, and in between these surgeries she continued to work at First Financial. The day after her second surgery (Aug. 12, 2005), she stopped working and did not return to the workforce until Sept. 2008. (Pl.'s Mot. Summ. J. 7, doc. no. 12.) Plaintiff argues that this commitment to working shows that she is not, and would not, simply choose not to work if she were physically able to. (<u>Id.</u>)

Second, Plaintiff submits that, in violation of the Supreme Court decision in <u>Glenn</u>, Unum impermissibly based its

13

decision on the opinion of Dr. Anderson at the expense of all the evidence in the case. (Pl.'s Mot. Summ. J. 8, doc. no. 12.)  A comprehensive evaluation of all the information before the administrator, according to Plaintiff, renders the decision of the claims administrator arbitrary and capricious.

In support of her argument, Plaintiff points to the opinions, in chronological order, of both Dr. Anderson and Dr. Aksu, her treating physician.

First, on Jan. 18, 2008, Dr. Aksu examined Plaintiff and noted that she had undergone epidural injections without significant relief, that she was doing a home exercise program formulated by a physical therapist, and that if Plaintiff's condition did not improve in 4 to 6 weeks, Dr. Aksu would recommend surgical intervention. (Pl.'s Mot. Summ. J. 8, doc. no. 12.)  This report also stated that Plaintiff was unable to continue formal physical therapy for financial reasons (pending the determination of her Worker's Compensation suit), although nothing was precluding her from continuing to do the physical therapy exercises at home.  (Id.)

Next, on Feb. 28, 2008, Dr. Anderson conducted an independent medical exam ("IME") on the Plaintiff, concluding that "it would be in the patient's best interest for her to be progressed towards a sedentary level of employment."  Plaintiff points out, however, that Dr. Anderson did not unequivocally

14

release her to return to work, placing substantial limitations on her ability to work - including no lifting of more than ten pounds and no bending or twisting of the lower back. Further, Dr. Anderson stated that Plaintiff may require a course of rehabilitation before returning to work. (Id. at 9.) Plaintiff argues that the two reports in the record at this point do not constitute a release to return to work, but simply outline a plan of rehabilitation that may progress to a return to work at some point in the future. (Id.)

The next report in the record is an addendum report issued by Dr. Anderson on April 18, 2008. In this report, completed twelve days before Unum terminated Plaintiff's long term benefits on April 30, Dr. Anderson stated that "Ms. Kovach would be capable of performing this job immediately as long as allowances are made for her to participate in a course of structured physical therapy." (Pl.'s Mot. Summ. J. 9, doc. no. 12.) Dr. Anderson authorized her to gradually return to a maximum 40 hour work week after a month of "wean[ing] back into the position." (Id.) Dr. Anderson then states that gentle physical therapy rehabilitation and work hardening for 4-6 weeks would "assist her in a successful transition to full time employment." Again, Plaintiff does not construe this as an unequivocal release to return to work.

Plaintiff then points to two opinions of her treating

15

physician, Dr. Aksu, both issued after Unum's April 30, 2008, decision to terminate benefits.  The first is an entry from a phone log from Dr. Aksu's office, entered on May 12, 2008.  The entry reads:

> I read the report and can not dispute Dr. Anderson's findings and recommendations.  I believe it would be possible to her TRY the restrictions set forth by him. [T]here is nothing else to say.  If work comp approves this then we can send her to p.t. for workhardening and see her back.  [A]lso if she cannot tolerate these restrictions surgery is the next step.

(Pl.'s Mot. Summ. J. 11, doc. no. 12.)[9]

Plaintiff then points to Dr. Aksu's opinion from an examination of Plaintiff conducted a month later on June 12, 2008.  In this report, Dr. Aksu finds her condition to be worsening and he "recommend[s] that she not attempt going back to work even on a limited basis because of the possibility of worsening her condition."  (Pl.'s Mot. Summ. J. 10, doc. no. 12.) Dr. Aksu recommends continued home exercise, restarting physical therapy, pending insurance coverage of the expenses, and possible surgery if Plaintiff's condition does not improve.  (Id.) Plaintiff reconciles the conflict between the opinion expressed in the phone log and the opinion in the June 12, 2008 opinion by

_____

[9]    Plaintiff disputes the authority of this phone log entry, stating "[f]irst, it is not contained in a medical report, but simply is a notation by an unknown person in a phone log." (Pl.'s Mot. Summ. J. 11, doc. no. 12.)  Defendant refutes this argument, pointing out that the record was made by Dr. Aksu under his electronic signature, and pursuant to the normal procedure for making these records.  (Def.'s Reply to Pl.'s Mot. Summ. J. 12, Ex. 88, doc. no. 13.)

stating that the opinion found in the phone log is unreliable and uncertain in its conclusion.  (Id. at 11.)

Taken altogether, Plaintiff argues that none of the above medical opinions unequivocally state that Plaintiff is able to return to work without restriction.  Plaintiff points especially to Dr. Aksu's June 12, 2008 report which states that, in his opinion, Plaintiff is not prepared to return to work at this time.  Based on the medical opinion of Dr. Aksu and applying the Sixth Circuit's reasoning in Glenn v. Metropolitan Life Ins., 461 F.3d 660 (6th Cir. 2006), aff'd by Glenn, 128 S.Ct. 2343 (2008), Plaintiff contends that Unum impermissibly gave undue weight to the April 18 report of Dr. Anderson, disregarding any medical evidence contrary to this opinion.  Therefore, Plaintiff argues that the decision to deny benefits to Plaintiff was arbitrary and capricious.

Defendant responds by arguing that the decision to discontinue benefits did not afford undue weight to the opinion of Dr. Anderson at the expense of the other information available in the case, including the opinions of Dr. Aksu.  (Def.'s Reply in Opp'n to Pl.'s Mot. Summ. J. 9, doc. no 13.)  Furthermore, Defendant argues that Plaintiff's application of the Sixth Circuit's decision in Glenn to the instant case is inapposite. (Id. at 12.)

Unum points to evidence that it considered an array of

17

reviews, reports and information before making the decision to
terminate benefits under the Plan.    Unum contends that Dr.
Anderson's IME and his reports were part of the administrative
record and were considered by Unum before denying the claim.
(Def.'s Reply in Opp'n to Pl.'s Mot. Summ. J. 9, doc. no 9.)
Unum also considered the "additional information and admissions"
made by Plaintiff's treating physician, Dr. Aksu, the
confirmation from her podiatrist, Dr. McHugh, that she could work
full-time from a podiatry perspective, the field representative's
interview, and the vocational consultant's review.  (Id. at 10.)

        After review of all these factors, Unum contends that a
determination that Plaintiff could return to work on a part time
basis was appropriate.  Once this determination was made, the
terms of the policy stated that payments would cease "when you
are able to work in any gainful occupation on a part-time basis
but you choose not to."  (Id. at 11.)    Defendant then notes
that, after the decision to terminate Plaintiff's benefits was
made, an independent compliance review was conducted on April 29,
2008.  During this review, a disability benefits specialist, a
director, and a quality compliance consultant confirmed the
claims decision.  (Id. at 11, Ex. 88.)  On May 28, 2008,
Plaintiff initiated her appeal of the decision to terminate her
benefits.

        Defendant next points to a review conducted as part of

18

the appeals process by Dr. Isadore G. Yablon, M.D., a board certified orthopedist. Dr. Yablon's conclusions were in accordance with Dr. Anderson's, specifically that Plaintiff could return to work provided that she not lift more than ten pounds and avoid repetitive bending and twisting of the lower back. (Def.'s Reply in Opp'n to Pl.'s Mot. Summ. J. 12, doc. no 13.) Dr. Yablon also opined that a lack of structured physical therapy should not be an impediment to Plaintiff returning to work, as these "could be taught to her and she could well do these exercises at home on her own." (Id. at Ex. 90.) Finally, prior to denying Plaintiff's appeal, Unum consulted Richard Byard, a vocational rehabilitation consultant, who advised that the restrictions outlined by Dr. Yablon would not preclude Plaintiff from participating in her sedentary occupation as an accountant. (Id. at Ex. 92.)

With regard to Plaintiff's argument that the facts in the Sixth Circuit's opinion in Glenn are analogous to the current case, Defendant counters that Unum did not emphasize a single medical report over others and that here Unum conducted a thorough and fair review before making the decision to terminate Plaintiff's benefits. (Def.'s Reply in Opp'n to Pl.'s Mot. Summ. J. 13, doc. no 13.)

The Court agrees with Defendant. Based on all of the evidence in the record including Dr. Anderson's report, it was

19

not arbitrary and capricious to conclude that Plaintiff could return to her sedentary occupation on at least a part time basis as of April 2008.

### 3. Controlling Weight of Dr. Aksu's Report

Plaintiff urges the Court to give controlling weight to Dr. Aksu's report of June 12, 2008, which expressed the opinion that Plaintiff was not fit to return to work. First, this report was written after the decision to terminate benefits was made on April 30, 2008. Second, the report is contrary to Dr. Aksu's previous opinion, reflected in his office phone log from May 12, 2008. Third, the report is also contrary to the report of Dr. Anderson which concludes that Plaintiff was fit to return to work. The claims administrator is not required to afford controlling weight to the opinion of the treating physician. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 822 (2003) ("ERISA does not require plan administrators to accord special deference to the opinions of treating physicians.") Furthermore, an administrator is permitted to rely on the opinions of its own consulting doctors, in this case Dr. Anderson, and does not need to provide a special explanation of the weights given to each piece of evidence considered in making the decision. See Schlegel v. Life Ins. Co. of North American, 269 F. Supp. 2d 612, 627 (E.D. Pa. 2003); see also Nichols v. Verizon Communications, Inc., 2003 WL 22384772 at *3 (3d Cir. Oct. 20, 2003). Therefore,

the Court finds that Defendant's decision did not give undue
weight to the opinion of Dr. Anderson at the expense of the
opinion of Dr. Aksu.  The record reflects the numerous reports,
records and consultations considered by the administrator, many
of which supported Dr. Anderson's conclusion that Plaintiff could
return to work.

        The Court also finds Plaintiff's argument that the
decision of the Sixth Circuit in <u>Glenn</u> is directly controlling
unavailing.  The Sixth Circuit, in addition to noting that the
claims administrator emphasized one report to the exclusion of
others, which is not the case here, found that the insurer failed
to provide its vocational and medical experts with all the
relevant facts.  <u>Glenn</u> 128 S.Ct. at 2352 (summarizing the
reasoning underlying the Sixth Circuit decision).  Finally, the
Sixth Circuit found that the administrator had failed to give any
weight to the primary physician's reports.  <u>Id.</u>

        The facts of <u>Glenn</u> are not similar to the facts in the
instant case.  As discussed above, there is no evidence here that
one report was considered at the exclusion of others.  Second,
there is no allegation that the vocational and consulting experts
were provided fewer than all the relevant facts.  Finally, each
report from Dr. Aksu, the primary treating physician, was
included as part of the administrative record and considered
along with the other reports and facts.  (Def.'s Reply in Opp'n

21

to Pl.'s Mot. Summ. J. 9, doc. no 13.)   Defendant has shown that
Dr. Aksu's reports were afforded due consideration in the
process.

        As to Plaintiff's argument that the reports upon which
the decision was based did not express an unequivocal release to
return to work, the Court finds this argument unpersuasive.   The
terms of the Plan only define someone as disabled if they are
"limited from the material and substantial duties of your regular
occupation due to your sickness or injury." (Def.'s Mot. Summ.
J. 4, doc. no. 9.)   The limitations placed on Plaintiff,
specifically that she refrain from lifting more than ten pounds
or twisting her the lower back, do not interfere with the
material and substantial duties of being an accountant.   This
opinion was advanced by vocational rehabilitation experts Kim S.
Walker and Richard Byard and considered by the administrator
during the claims review process.   (Id. at 16.)   Further, it is
not improper to deny continuing long term disability payments to
a claimant despite some restrictions on her return to work.   See
Wernicki-Stevens v. Reliance Standard Life Ins. Co., 641 F. Supp.
2d 418, 426 (E.D. Pa. 2009).

        Additionally, the suggestion that the Plaintiff's
failure to engage in structured physical therapy to improve her
condition because of the pendency of her Worker's Compensation
action is not dispositive.   The opinions from Dr. Yablon and Dr.

Anderson both indicated that while physical therapy would improve Plaintiff's condition, she could progress to full time employment immediately, and the physical therapy exercises could be completed at home. Neither opinion was conditioned on the completion of a physical therapy program. Rather, the program was a suggestion. (Def.'s Reply in Opp'n to Pl.'s Mot. Summ. J. 10-12, doc. no 13.)

Under these circumstances, the determination of the administrator was correctly based on all the information in the case file, including the opinions of Dr. Anderson and Dr. Aksu[10], that Plaintiff could return to her occupation immediately, so long as she did not lift over ten pounds and refrained from twisting her back. While physical therapy seemingly would have helped Plaintiff fully recover, in Dr. Anderson's and Dr. Yablon's opinions, a failure to engage in structured physical therapy would not have precluded Plaintiff from returning to work, just as the restriction on lifting and twisting did not preclude Plaintiff from returning to work in her occupation. Therefore, the suggestion of physical therapy, and Plaintiff's inability to complete it did not render the administrator's

---

[10]    The opinions of Dr. Aksu were not entirely consistent. In the phone record from May 12, 2008 Dr. Aksu expresses agreement with Dr. Anderson's conclusion that Plaintiff could return to work. In Dr. Aksu's opinion issued one month later, on June 12, 2008, he recommends that Plaintiff not attempt to return to work.

decision to terminate benefits arbitrary and capricious.  <u>See</u>
<u>Wernicki-Stevens</u>, 641 F. Supp. 2d at 426 (upholding
administrator's decision to terminate benefits when certain
restrictions on activities are imposed.)

### 4. <u>Entitlement to Residual Disability Benefits</u>

Plaintiff's final argument is that she is still
entitled to residual disability benefits under the Plan.  (Pl.'s
Mot. Summ. J. 12, doc. no. 12.)  Plaintiff argues that she still
suffers from her lower back injury, was compelled to return to
work by economic necessity, and that her employment with Dr.
McHugh pays her significantly less than her position as a staff
accountant with First Financial.  (<u>Id.</u>)

In support of this position, Plaintiff points to the
Third Circuit decision in <u>Lasser v. Reliance Standard Life Ins.</u>
<u>Co.</u>, 344 F.3d 381 (3d Cir. 2003), which states that a claimant's
return to work is not dispositive of her disability.  Under
<u>Lasser</u>, according to Plaintiffs, a return to work by the claimant
does not preclude her from continuing to receive benefits under
the terms of the Plan.  (<u>Id.</u> citing <u>Lasser</u>, 344 F.3d at 392.)

Defendant responds that Plaintiff is not entitled to
residual benefits because the Plan does not contain a residual
disability benefits provision, and even if it did, Plaintiff's
coverage under the Plan ceased when she was permitted to return

to work and chose not to.  Therefore, relying on the provision of
the Plan which states that "[a]fter 24 months of payments, you
are disabled when . . . you are unable to perform the duties of
any gainful occupation for which you are reasonably fitted by
education, training or experience."  (Def.'s Resp. in Opp'n to
Pl.'s Mot. Summ. J. 14, doc. no. 13.)  Defendant argues that if
the decision to terminate long term disability benefits in April
2008 was not arbitrary and capricious then Plaintiff was no
longer entitled to any disability benefits under the Plan, long-
term or residual.  (Id.)

        The Court has already determined that the
administrator's decision to terminate long term disability
payments was not arbitrary and capricious.  Therefore, under the
Plan, Plaintiff is not entitled to residual disability benefits.
The correspondence sent to Plaintiff on April 29, 2008, stated
that "no further benefits are payable on your claim."  (Id.)
Since the decision to terminate Plaintiff's long term benefits
was not an abuse of discretion, Plaintiff is not entitled to
continued residual benefits for the period after Sept. 2008.

    B. Defendant's Motion for Summary Judgment

        Unum cross-moves for summary judgment, arguing that its
discontinuation of Plaintiff's long-term disability benefits was
not arbitrary and capricious.  Unum acknowledges that it was
operating under a structural conflict of interest, but argues

that this conflict of interest had no bearing on the ultimate decision to discontinue benefits.

In support of its motion, Unum relies on the administrative record and the evidence submitted in refuting Plaintiff's arguments. Therefore, for the reasons discussed above, Defendant's motion for summary judgment will be granted.

IV. CONCLUSION

For all of these reasons, Defendant's motion for summary judgment will be granted and Plaintiff's motion for summary judgment will be denied. An appropriate order follows.

26

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ARIA KOVACH,                          :    CIVIL ACTION
                                      :    NO. 08-5388
          Plaintiff,                  :
                                      :
     v.                               :
                                      :
                                      :
UNUM LIFE INS. CO. OF                 :
AMERICA,                              :
                                      :
          Defendant.                  :

## O R D E R

**AND NOW**, this **30th** day of **December, 2009**, upon consideration of Plaintiff's motion for summary judgment (doc. no. 11), it is hereby **ORDERED** that the motion shall be **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment (doc. no. 9) is **GRANTED**.

**IT IS FURTHER ORDERED** that the case shall be marked **CLOSED**.

**AND IT IS SO ORDERED**.

_____
**EDUARDO C. ROBRENO, J.**